UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BARBARA BERG, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

STERLING JEWELERS, INC. d/b/a KAY JEWELERS, a Delaware corporation,

    Defendant.

CASE NO._____

JURY TRIAL DEMANDED AND INJUNCTIVE RELIEF SOUGHT

## CLASS ACTION COMPLAINT

Plaintiff Barbara Berg ("**Plaintiff**"), individually and on behalf of all other persons similarly situated, complains and alleges as follows:

## NATURE OF ACTION

1. Defendant is one of the world's largest retailers of diamond jewelry. To combat decreasing diamond sales caused by the "blood diamond" effect and to offset costs incurred in civil litigation alleging it fostered sexual harassment in the workplace, Defendant resorted to unsolicited text message marketing campaigns to sustain its revenues and harmed thousands of innocent consumers in the process.

2. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of Defendant Sterling Jewelers, Inc. d/b/a Kay Jewelers ("**Defendant**") in transmitting advertisement and telemarketing text messages to the cell phones belonging to Plaintiff and numerous

other similarly situated persons using an automatic telephone dialing system ("**ATDS**") without anyone's prior express written consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**").

3. Through this action, Plaintiff seeks to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## PARTIES

4. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Miami-Dade County, Florida, and the subscriber and user of the cellular telephone number (305) ***-7119 (the "**7119 Number**").

5. Defendant is, and at all times relevant hereto was, incorporated under the laws of Delaware and a "person" as defined by 47 U.S.C. § 153(39). Defendant's primary place of business is in Akron, Ohio. Defendant is the owner of the Kay Jewelry brand of jewelry stores which has brick-and-mortar locations all around the United States, including within this judicial district.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

7. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

8. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant maintains brick-and-mortar locations in Florida, and it initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertisement text messages into Florida, via an ATDS and without the recipients' prior express written consent, in violation of the TCPA. Specifically, Defendant initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertisement or telemarketing SMS text messages to the 7119 Number to sell products and services in Florida. The 7119 Number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages on the 7119 Number while residing in and physically present in Florida.

9. Plaintiff's claims for violation of the TCPA against Defendant, and the resulting injuries caused to Plaintiff by Defendant's advertisement and telemarketing messages, which includes the invasion of Plaintiff's privacy, arose in substantial part from Defendant's direction of those messages into Florida.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendant's actions and omissions which gave rise to the claims asserted in this action occurred here.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

11. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA in 1991. To prevail in an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

12. By enacting the TCPA, Congress made specific findings that "unrestricted marketing can be an intrusive invasion of privacy" and a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). Through the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing calls and advertisements. *See* Pub. L. 102–243, § 2, ¶ 12.

13. According to findings by the Federal Communications Commission ("**FCC**"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited absent the requisite consent because such transmissions are a greater nuisance than live solicitation calls, and receiving and addressing such calls and texts can be costly and inconvenient.

14. According to a recent study conducted by the Pew Research Center, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."

Indeed, one of the most prevalent bulk advertising and telemarketing methods employed by companies today involves the use of "Short Message Services" (or "**SMS**"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones.

15. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are physically carried by their owners, SMS text messages are received virtually anywhere in the world.

16. Unlike more conventional advertisements, advertising and telemarketing SMS text messages can actually cost their recipients money. This is because wireless phone users must either pay their wireless service providers for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is even authorized or wanted.

17. In 2013, in response to growing concern over unwanted advertisements and telemarketing material being sent to consumers via SMS text message, the FCC updated its rules on consent to require that companies obtain the "**prior express written consent**" of the recipient before using an ATDS to make any call or send any SMS text message that contains "advertisements" or "telemarketing." *See* 47 C.F.R. 64.1200(f)(8).

18. To obtain express written consent for telemarketing calls, a defendant

must establish that it secured the recipient's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell

property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139–142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id.*

23. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute [telemarketing]" under the TCPA. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991–92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the **text message**). (emphasis added).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

26. On or about January 23, 2019, Defendant sent or caused to be sent to the following text message to the 7119 Number:



27. As is apparent, the text message above advertises the commercial availability of Defendant's property, goods, and services and encourages the future purchase or investment in property, goods, or services, i.e., selling Plaintiff jewelry.

28. The information contained in the text message advertises Defendant's promotion for "$50 off* orders of $199+ with code…," which Defendant sends to promote its business.

29. Plaintiff received the subject text in Miami-Dade County, which is within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

30. Upon information and belief, Defendant caused other text messages identical to the one above to be sent to individuals residing within this judicial district and throughout the United States.

31. Upon information and belief, Defendant sent the same message it sent to Plaintiff on January 23, 2019 to at least 100 other cell phone numbers.

32. The Plaintiff is the subscriber and sole user of the 7119 Number and is financially responsible for phone service to the 7119 Number.

33. The source of each of the unsolicited SMS text messages sent by Defendant to the 7119 Number was 553935, which is an SMS short code owned or leased by or on behalf of Defendant or Defendant's agent(s) or affiliate(s), and is used for operating Defendant's text message campaign, including the sending of SMS text messages telemarketing and advertising various of Defendant's goods and services.

34. The source of each of the unsolicited SMS text messages sent by Defendant, i.e., short code telephone number 553935, is a short code telephone number that is registered with Telcordia Technologies, Inc. ("**Telcordia**") as having been assigned to Kay Jewelers.

35. Telcordia's records reflect Key Jewelers as the current assignee of short code telephone number 553935 and corresponds it to a campaign named "Kay Jewelers Mobile Alerts."

36. In addition, Telcordia's records confirm that "Kay Jewelers is using their non-vanity short code 553935, to send retail SMS coupons and promotions."

37. Telcordia's records also state that "[w]hile Kay Jewelers will not disclose how large their retail SMS campaign has become, it's very common for retailers to exceed over 1 million … subscribers."

38. All telephone contact by Defendant and/or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 7119 Number occurred via an ATDS ("automated telephone dialing system") as defined by 47 U.S.C. § 227(b)(1)(A) because the unsolicited telemarketing SMS text messages were sent from 553935, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of SMS text messages were written in a generic and impersonal manner, thus demonstrating that the text messages were sent to numerous other consumers.

39. The complained of SMS text message sent to the 7119 Number did not constitute a call made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

40. Defendant's text message invaded Plaintiff's privacy, intruded upon her seclusion and solitude, constituted a nuisance, and wasted her time by requiring her to interact with the message. Further, Defendant's text message caused Plaintiff to

incur tangible harms such as loss of cell phone battery life and financial losses in requiring her to recharge her phone. Finally, Defendant's text messages constituted a temporary electronic intrusion upon Plaintiff's cell phone and interfered with her ability to use it.

41. Plaintiff has no reason to believe, that absent a Court Order, that Defendant would voluntarily stop violating the TCPA.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23(b)(3). The "Class" Plaintiff seeks to represent is comprised of and defined as:

> All persons who received an SMS text message, sent by or on behalf of Defendant or an agent of Defendant from a short code telephone number, including the short code telephone number 553935.

43. Excluded from the Class is Defendant, any entity in which the Defendant has a controlling interest, or which has a controlling interest in the Defendant, and any of Defendant's legal representatives, assigns or successors. Also excluded is any judge presiding over this case and any member of any such judge's immediate family. Members of the Class are referred to as "Class Members."

44. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

45. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendant and/or its agents, affiliates or subsidiaries.

11

46. Plaintiff seeks injunctive relief and monetary damages on behalf of herself and the Class.

47. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

48. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, and/or judicial economy.

49. **Numerosity**. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

50. **Typicality**. Plaintiff received at least one SMS text message from Defendant, sent via an ATDS, without first providing her "express written consent" to receive "advertisement or "telemarketing" text messages via an "ATDS" within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of those of the other Class Members she seeks to represent, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members she seeks to represent. Plaintiff and all Class Members have been impacted by, and face continuing harm

from, Defendant's violations and/or misconduct as alleged herein.

51. **Adequacy**. As Class representative, Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and is able to fairly and adequately represent and protect the interests of the Class Members. Plaintiff has raised viable claims of the type reasonably expected to be raised by the Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Complaint to add additional representatives of the Class or assert additional claims.

52. **Competency of Class Counsel**. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this action. These lawyers are experienced in handling complex class action claims, including class actions alleging violations of the TCPA, and have previously been appointed as class counsel in such cases.

53. **Commonality and Predominance**. There are well defined common questions of fact and law that affect all members of the Class and that predominate over any questions affecting only individual members of the Class. The common legal and factual questions, which do not vary from Class Member to Class Member, may be determined without reference to the individual circumstances of any Class Member, and include (but are not limited to) the following:

   a. Whether Defendant and/or any of its affiliates, subsidiaries, or agents transmitted advertising or telemarketing SMS text messages to Class Members' cellular telephones;

    b. Whether the SMS text messages transmitted by Defendant and/or any of its affiliates, subsidiaries, or agents were transmitted using an automatic telephone dialing system;

    c. Whether Defendant and/or any of its affiliates, subsidiaries, or agents can satisfy their burden in proving they obtained prior express written consent (as defined by 47 C.F.R. § 64.1200(f)(8)) to send the complained of text messages;

    d. Whether Defendant's complained of conduct was knowing and/or willful;

    e. Whether Defendant and/or any of its affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

54. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if Class Members could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts for individual litigation of numerous cases to proceed. Individualized litigation also presents the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Class Member. Plaintiff anticipates no difficulty in the management of this action as a class action.

Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these class claims is likely to present significantly fewer difficulties than are presented in many individual claims because the text messages at issue are all automated and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class Members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

55. Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class Members to protect their interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

56. Defendant and/or any of its affiliates, subsidiaries, or agents have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate.

57. Moreover, on information and belief, the TCPA violations complained of

herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Class Against Defendant)*

58. Plaintiff hereby incorporates paragraphs 1-57 as if fully stated herein.

59. The foregoing acts and omissions constitute violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

60. Because of the Defendant's violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

61. Plaintiff and all Class Members are also entitled to, and seek, an award of $500.00 in statutory damages for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

62. Plaintiff and Class Members also seek an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### KNOWING AND/OR WILLFUL VIOLATION
### OF THE TCPA (47 U.S.C. § 227)
*(On Behalf of Plaintiff and the Class Against Defendant)*

63. Plaintiff hereby incorporates paragraphs 1–57 as if fully stated herein.

64. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

65. Because of Defendant's knowing and/or willful violations of 47 U.S.C. §

227, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

66. Plaintiff and all Class Members are also entitled to, and seek, treble damages of up to $1,500.00 for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

67. Plaintiff and Class Members also seek an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### TRESPASS TO CHATTELS
*(On Behalf of Plaintiff and the Class Against Defendant)*

68. Plaintiff hereby incorporates paragraphs 1–57 as if fully stated herein.

69. The foregoing acts constitute a temporary electronic intrusion, by Defendant, onto Plaintiff's cellular phone and interfered with her ability to use it by temporarily occupying the telephone line.

70. The foregoing acts also caused Defendant to take up storage space on Plaintiff's cellular phone and drew down on its battery reserves.

71. Defendant did not have consent to interfere with Plaintiff's use or enjoyment of her cell phone.

72. Defendant's interference with Plaintiff's cell phone was not justified.

73. Plaintiff has been harmed as a result of Defendant's actions.

74. The foregoing acts constitute a trespass to chattels by Defendant.

75. Defendant's conduct has caused Plaintiff irreparable harm for which monetary damages are wholly inadequate.

76. Because of Defendant's conduct, which is continuing or poses the threat of continuation in the future, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such future conduct.

## PRAYER FOR RELIEF

Plaintiff prays for relief and judgment in his favor, as follows:

A. Injunctive relief prohibiting such violations of the TCPA and the common law in the future;

B. As a result of Defendant's violations of 47 U.S.C. §227(b)(1), Plaintiff seeks for herself and each Class Member $500.00 in statutory damages for each and every violative SMS text message;

C. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class Member treble damages, as provided by the statute, of up to $1,500.00 for each and every violative SMS text message;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

E. An Order certifying this action to be a proper class action pursuant to Fed. R. Civ. P. 23, establishing appropriate Class and any additional subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing Plaintiff's counsel as counsel for the Class.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby demands a jury trial on all issues so triable.

<u>June 10, 2019</u>　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By: <u>*/s/ Ruben Conitzer*</u>
　　　　　　　　　　　　　　　　　　David P. Milian (Fla. Bar No. 844421)
　　　　　　　　　　　　　　　　　　Email: dmilian@careyrodriguez.com
　　　　　　　　　　　　　　　　　　Secondary: ecf@careyrodriguez.com
　　　　　　　　　　　　　　　　　　Ruben Conitzer (Fla. Bar No. 100907)
　　　　　　　　　　　　　　　　　　Email: rconitzer@careyrodriguez.com
　　　　　　　　　　　　　　　　　　Secondary: cperez@careyrodriguez.com
　　　　　　　　　　　　　　　　　　CAREY RODRIGUEZ MILIAN GONYA LLP
　　　　　　　　　　　　　　　　　　1395 Brickell Avenue, Suite 700
　　　　　　　　　　　　　　　　　　Miami, FL 33131
　　　　　　　　　　　　　　　　　　Telephone: (305) 372-7474
　　　　　　　　　　　　　　　　　　Facsimile: (305) 372-7475
　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Barbara Berg*